UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:17-cv-01275 JVS-KES | Date | November 26, 2018 |
| Title | Leticia Barron v. State of California et al | | |

Present: The Honorable   James V. Selna

| Karla J. Tunis | Sharon Seffens |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Dale Galipo<br>Renee Masongsong | Mark Brown |

**Proceedings:** **Defendants' Motion in Limine to Exclude Improper Opinions of Plaintiff's Retained Expert Jeffery Boxer (Docket No. 48)**

**Plaintiff's Motions in Limine (Docket Nos. 50 & 51)**
**1) to Exclude Any Argument re "Suicide by Cop" Theory and Related Evidence**
**2) to Exclude Information Unknown to Officer Agee at the Time of the Shooting Incident**

Cause called and counsel make their appearances. The Court's tentative ruling is issued. Counsel make their arguments. The Court GRANTS IN PART and DENIES IN PART the Plaintiff's Motions in Limine and the defendants' Motions in Limine. The Court makes this ruling in accordance with the tentative ruling as follows.

Plaintiff Leticia Barron ("Barron") and defendants State of California and Daniel Agee ("Agee") (collectively "State defendants") move the Court for relief by way of Motions *in Limine*. The Court now enters its rulings.

I.      Barron's Motions *in Limine.*

Barron's Motions *in Limine* Nos. 1 and 2 seek overlapping relief for the exclusion of evidence relating generally to the theory of "suicide by cop." (Docket Nos. 50, 51.) The State defendants have filed separate oppositions (Docket Nos. 53, 54), and Barron has filed separate replies (Docket Nos. 58, 61).

The Court first considers the eight specific items which Barron seeks to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:17-cv-01275 JVS-KES | Date | November 26, 2018 |
| Title | Leticia Barron v. State of California et al | | |

exclude in Motion *in Limine* No. 2, and then considers her request for the exclusion the opinion of Dr. Manual Saint Martin.

    A.  General Principles.

    1.  Law of Excessive Force.

It is well settled that the lawfulness of the force used in an excessive force case is judged by an objectively reasonable standard in the light of the specific circumstances of the case. Graham v. Connor, 490 U.S. 386, 396 (1989). The main focus is what was known to the officer when he the decision to use force and the degree of force. (Id. at 396-97.)

However, it does not follow that information not known to the officer is *ipso facto* irrelevant. As the Ninth Circuit pointed out in Boyd v. City and County of San Francisco, 576 F.3d 938, 944 (9th Cir. 2009): "In a case such as this, where what the officer perceived just prior to the use of force is in dispute, evidence that may support one version of events over another is relevant and admissible." Case law reflects the present circumstances: "It is not uncommon for courts to permit evidence that a plaintiff/decedent was under the influence of alcohol or drugs to explain unusual behavior or to corroborate an officer's account of how a decedent acted." Turner v. County of Kern, 2014 WL 560834 at * 2 (E.D. Cal. Feb. 13, 2014) (emphasis supplied).

    2.  Assessing Experts.

Federal Rule of Evidence 702 permits expert testimony from "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education," if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

(Fed. R. Evid. 702.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:17-cv-01275 JVS-KES | Date | November 26, 2018 |
| Title | Leticia Barron v. State of California et al | | |

The Court is called to exercise its "gatekeeper" function to "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 597 (1993). A trial court's "gatekeeping" obligation to admit only expert testimony that is both reliable and relevant is especially important "considering the aura of authority experts often exude." Mukhtar v. Cal. State Univ., 299 F.3d 1053, 1063-64 (9th Cir. 2002). Nevertheless, "[s]haky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." Primiano v. Cook, 598 F.3d 558, 564 (9th Cir. 2010). Importantly, the Court's gatekeeper role under Daubert is "not intended to supplant the adversary system or the role of the [trier of fact]." Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd., 326 F.3d 1333, 1341 (11th Cir. 2003) (internal quotation marks and citation omitted). In other words, at this stage, the Court is not supposed "to make ultimate conclusions as to the persuasiveness of the proffered evidence." (Id.)

The requirement that expert testimony "help the trier of fact to understand the evidence or to determine a fact in issue" goes primarily to relevance. Primiano, 598 F.3d at 564.

The Rule 702(c) and (d) reliability indicators are subject to a more flexible analysis. According to the Ninth Circuit,

> [i]n Daubert, the Supreme Court gave a non-exhaustive list of factors for determining whether scientific testimony is sufficiently reliable to be admitted into evidence, including: (1) whether the scientific theory or technique can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) whether there is a known or potential error rate; and (4) whether the theory or technique is generally accepted in the relevant scientific community.

Domingo ex rel. Domingo v. T.K., 289 F.3d 600, 605 (9th Cir. 2002).

The trial court has "broad latitude" in deciding how to determine the reliability of an expert's testimony and whether the testimony is in fact reliable. Mukhtar, 299 F.3d at 1064; see also Kumho Tire Co. v. Carmichael, 526 U.S. 137, 152 (1999). The "test of reliability is 'flexible,' and Daubert's list of specific factors neither

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:17-cv-01275 JVS-KES | Date | November 26, 2018 |
| Title | Leticia Barron v. State of California et al | | |

necessarily nor exclusively applies to all experts or in every case." Kumho Tire, 526 U.S. at 141.

      B.  Specific Items of Evidence.

The common thread for each item Barron seeks to exclude is that it was unknown to Agee on the night of the incident when he shot the decedent Mauricio Barron, but as noted above that is not necessarily determinative of its relevance.

Each item Barron seeks to exclude relates to the decedent's mental health, some being more remote than others. Agee's perception of the decedent's mental condition is a key element of the Connor analysis, and much of the evidence Barron seeks to exclude is corroborative

*Blood and Beer in Osterhold Vehicle.* The decedent car jacked Brian Osterhold's ("Osterhold") vehicle shortly before the incident. When Osterhold recovered the vehicle, there was blood and beer in the car. The beer is corroborative of Agee's observations that the decedent was impaired at the time of the incident. The blood is corroborative of the evidence of a self-inflicted wound. This evidence is relevant.

That Barron offers a contrary theory for the wound on the decedent's arm through its expert does not foreclose an alternative explanation.

The Court indicated at the hearing that it would allow evidence of he hijacking. It is illustrative of disturbed mental state, particularly given that Osterhold was a long time friend.

The evidence is not sufficiently prejudicial to outweigh the probative value and compel exclusion under Federal Rule of Evidence 403.

*Bloody "X."* After the incident, a bloody "X" in the decedent's blood was found near the site of the shooting. The evidence is corroborative of impaired behavior which Agee observed. The evidence rebuts the contention that the wound on the decedent's arm was the result of a gunshot would. The evidence is relevant, and is not excludable under Rule 403.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:17-cv-01275 JVS-KES | Date | November 26, 2018 |
| Title | Leticia Barron v. State of California et al | | |

*Knife.*  A knife was found in the vicinity of the shooting the next day. Blood was found, and the decedent could not be excluded as the source.  This is relevant to the alternative explanation for the wound on the decedent's arm.  Given that Agee asserts that the decedent took a stance as if he had a gun, not a knife, this could not prove confusing, and is excluded.  Moreover, it is more prejudicial than probative.

*Pulling a Knife on Osterhold.*  There is evidence that the decedent pulled a knife on Osterhold and asked for his gun.  The Court concludes that this is evidence of a disturbed mental state.  The Court will allow the evidence, and finds it more probative than prejudicial.  (Fed. R. Evid. 403.)

*Hesitation Mark.*  The autopsy produced evidence that the decedent had lacerations on his left forearm.  This evidence is relevant to the decedent's impairment and state of mind at the time of the incident.  It also rebuts the theory that the wound was the result of a gunshot.

*Medical Records.*  Barron seeks to exclude the decedent's medical and mental health records.  While a general inquiry into the decedent's past mental health may be relevant to damages, particularly his relationship with his family, the evidence is unduly prejudicial with regard to liability.  The decedent's conduct just prior to the incident is far more probative of his condition that night.  If the State defendants' wish to go into this evidence for damages purposes, the Court will exclude the evidence in the liability phase and bifurcated damages.  Estate of Diaz v. City of Anaheim, 840 F.3d 592, 601-03 (9th Cir. 2016) .

*Hendrix Yuri.*  The decedent's marshal arts instructor has testified to a conversation with the decedent several days before the shooting.  The decedent related that he had been slipped a drink by an organized gang member which made him paranoid.  The day before the shooting Yuri drove the decedent from the Long Beach Marathon to a mental health facility because the decedent had been acting strangely.  This evidence is corroborative of impairment on the day of the incident.  The Court will bar Yuri from expressing an opinion that the decedent was acting "super paranoid" but will allow his to state his objective observations as well as the decedent's remarks.  This evidence is more probative that prejudicial.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:17-cv-01275 JVS-KES | Date | November 26, 2018 |
| Title | Leticia Barron v. State of California et al | | |

*Osterhold's Borrowing a Weapon.* As a result of an October 9, 2016 meeting with the decedent, Osterhold borrowed a weapon to protect himself and his family. The Court finds that the incident is more prejudicial that probative and excludes the evidence.

The Court finds that none of the evidence which the Court will allow can be characterized as improper character evidence under Federal Rule of Evidence 404(a). Rather it is relevant to and probative of the decedent's mental state at the time of the evidence.

C. Dr. Saint Martin.

Saint Martin is both a lawyer and a medical doctor. He is a diplomate of the American Board of Psychiatry and Neurology. (Docket No. 53-1, p. 1 ["Saint Martin Report"].) He appears to have reviewed all the formal and informal discovery, including interviews, depositions, reports involving Agee, Officer Anthony Gonzalez, Osterhold, and Yuri. (Saint Martin Report, pp. 1-9.)

He concludes that at the time of the incident the decedent was "extremely paranoid and disorganized in his thinking." He related a number of the episodes discussed above. (Id., p. 10.) He also asserts, "This behavior, while ostensibly the product of Mr. Baron's mental disorder, was volitional and it caused his death at the hands of the officers." (Id.)

The Court is satisfied the Dr. Saint Martin has the credentials and did sufficient fact finding to express opinions concerning the decedent's mental health. The Court believes that expert testimony would be of benefit to the jury. (Fed. R. Evid. 702(a). However, the Court excludes certain matters.

Dr. Saint Martin may give his psychiatric assessment, but may not state that the decedent's condition was the cause of the him being shot. The Court will bar Saint Martin from expressing the opinion that the decedent was either suicidal or homicidal.[1] The subjective intent of the decedent, which Agee could not know, is irrelevant.

---

[1] Although not presented in Barron's *in limine* Motions, the Court would likely bar any other witness from testifying that the decedent was suicidal or homicidal.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:17-cv-01275 JVS-KES | Date | November 26, 2018 |
| Title | Leticia Barron v. State of California et al | | |

Palmquist v. Selvik, 111 F.3d 1332, 1341 (7th 1997). The Court will also bar him from reciting the specific items which the Court has excluded above. In light the facts and Dr. Saint Martin's mental health assessment, the jury should have sufficient evidence to assess the threat which Agee encountered.

As stated at the hearing, the Court found it a close question whether Saint Martin should be permitted to testify at all. The Court will revisit the issue at the close of Barron's case

C. Conclusion.

Barron's Motions are granted in part and denied in part.

II. State Defendants' Motion in Limine.

The State defendants seek an order to exclude certain opinions of Barron's retained expert Jeffrey Boxer. (Docket No. 48.) Barron has filed an Opposition (Docket No. 55), and the State defendants have replied (Docket No. 57).

The Court addressed each of the contested opinions in ruling on the State defendants' objections to portions of the Separate Statement which Barron offered in opposition to the State defendants' Motion for Summary Judgement. (See Docket No. 47, p. 8.) The Court adopts those rulings here.

\* \* \* \* \* \* \* \* \* \* \* \* \*

**Counsel are ordered to advise the parties and all witnesses of the Court's rulings so that there are no inadvertent violations of this Order.**

| | : | 16 |
|---|---|---|
| Initials of Preparer | kjt | |